## Alexander v. Alexander.

(Decided November 13, 1928.)

Appeal from Carlisle Circuit Court.

1. Divorce.—Under evidence shown, husband held entitled to divorce on ground of abandonment under Ky. Stats., sec. 2117, providing that divorce may be granted to party not in fault for abandonment by one party of the other for one year.

2. Divorce.—Where husband was 73 years old and wife was 65 and husband was unable to work because of condition of his health, $900 paid to wife before divorce held sufficient alimony, and wife should be required to reconvey to husband one-half interest in home which stood in her name.

R. M. SHELBOURNE for appellant.

BEN S. ADAMS, R. O. WILLIGHAM and ROBERT L. GEVEDEN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

J. T. Alexander brought this action for divorce against his wife, Julia Alexander. He is 73 years old, and she is 65. They were married in 1886. He sought a divorce on the ground that she had abandoned him for more than a year. By counterclaim she sought a divorce from him on the ground of cruelty. The chancellor refused a divorce to either of them. He appeals.

The facts are these: They were married in Kentucky, but many years ago they moved to Poplar Bluff, Mo., where he was engaged in farming and operating a small dairy, and she raised chickens. They moved from there to Tamms, Ill., and some years later, in May, 1925, came to Arlington, Ky., and there bought a home for $900, which was deeded to them jointly. For three years he had been in very poor health and unable to do anything in the way of work. He was suffering from heart trouble, and had been in the hands of many physicians, but was nothing bettered. They had one son who lived in Illinois. In September, 1925, Mrs. Alexander left her husband, when he was entreating her not to leave him, and went to her son's to live. He made various efforts to get her to return, pledging her affection, but without any effect. Then after one year he brought this suit.

Section 2117, Kentucky Statutes, provides that a divorce may be granted:

"Also to the party not in fault, for the following causes: . . . Abandonment by one party or the other for one year."

There is no question under the evidence that the wife had abandoned her husband for more than a year when the suit was brought. But it is earnestly insisted that he was not "the party not in fault." The proof shows that they lived together all right for about 20 years, but in the last 20 years they have not gotten along so well. The depositions of seven or eight persons who knew them well show that so far as the witnesses saw the husband treated his wife kindly. One witness says this:

"She got turned against him; this was in the summer of 1924. It seemed like she had got disgusted with him."

Another witness says this:

"She would shy about him and would not have anything to say. If she ever grinned I never did see it. If she ever laughed I never did see it. She would slur him. He might talk to her all day and she would not have a thing to say. She was mighty glum."

Another witness says:

"I never saw him mistreat her and I never saw her only act cool, but she would not talk very much. She said, 'I don't know what is to become of us. He don't try to make anything, he is not making anything and when we live this up I will go to the poor-house before I spend my money."

Another witness testifies to this:

"She said she hated him and I heard her say she did not have a spark of love for him."

Another witness says that she told her lots of times that she hated him, so that it was a sin to live with him,

and that she was not going to live with him. She also says this:

"I never heard him speak cross or crabbed. When he came in she always had a frown, but she told me why she did it—that she hated him so that she could not stand him in her sight."

Mrs. Alexander, being asked if she made these statements, answered in substance:

"Not that I remember of; I said I never could have any use for him. I never could have the feeling that I had had for him."

And being asked what caused the separation between them, she answered:

"He was disobedient to me and did not treat me like he ought to have, always fussing at me and throwing up other men to me and everything of the kind that way."

He says that years ago she accused him of running after women, and he by way of a joke, made this reply. But from all the evidence it is very clear that all this occurred many years ago. One witness says that they had quarrels, and she adds:

"I could not tell which one would start them every time. They had their spells, something would come up, I could not tell you. One would get mad at the other. I considered they were both to blame. They would both get mad, but of course after they would get over it he would love her fit to eat her up again, but when she got mad she meant business. She did not have a forgiving disposition."

The other testimony in the case sustains this witness. Few married people fail to have differences now and then, especially where one of them is in bad health. Upon the whole record apparently the separation between these people grew out of the fact that the wife, for many years, was the treasurer of the family, and the husband thought she had more money than she had. He had only a few hundred dollars after buying the home, and he wanted her to contribute to the family expenses.

This she refused to do, and this led to disputes between them, and she got mad and left. The husband did not bring about the separation. That was not due primarily to his fault. The primary cause of the trouble was that he was not working and earning anything and she turned against him. On the whole case the record shows the husband to be the party not in fault for the separation. His failure to work and make a living was due to the condition of his health. He used every persuasion to get his wife to return to him.

After she had been away some time, she and their son returned, and it was agreed between them that if the husband would pay her $900 and give her the things she claimed in the house, she would make him a deed to her half of the home. She got the things, and he paid the $900; she then refused to execute the deed. The one-half of this property was clearly property received by her in consideration of the marriage and by reason of it. The amount paid her is a reasonable amount for her alimony, considering the condition of the parties and the husband's health. On the whole case the circuit court should have adjudged the husband a divorce and should have adjudged the wife to reconvey to the husband the one-half interest in the home, which stood in her name. She will pay the cost in this court, and he will pay the cost in the circuit court as adjudged by it.

Judgment reversed, and cause remanded for a judgment and further proceedings consistent herewith.